UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

LINCOLN CONTRACTORS SUPPLY, INC.,

    Plaintiff,

    v.                                                Case No. 24-CV-1365-SCD

JAMES FAME INTELLIGENCE, LLC,

    Defendant.

## DECISION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

Lincoln Contractors Supply, Inc. ("LCS") sued James Fame Intelligence, LLC ("Fame Intel") in Milwaukee County Circuit Court. Fame Intel removed the action to federal court and filed a motion to dismiss four of the six counts alleged by LCS. The claims stem from a contract in which Fame Intel promised to provide software and services to LCS. Essentially, LCS claims that Fame Intel both (1) engaged in fraudulent marketing to induce LCS to enter the contract and (2) failed to perform in accordance with the contract. The contract included a choice-of-law provision, which stipulated that New York law would govern any potential disputes, but the parties contest the scope of that clause. For the reasons below, I will grant the defendant's motion with respect to counts two, three, and four, and deny the motion with respect to count six.

## BACKGROUND

LCS sells and rents construction equipment across Wisconsin. ECF No. 20 at 3. Fame Intel is a New York limited liability company that provides asset management software. *See id.*; ECF No. 14 at 1. LCS alleges that Fame Intel, through representatives Josh Lewis and Joe

Lewis, presented a sales pitch in April 2022. *See* Compl., ECF No. 10-1 at 5 ¶ 9. LCS contends that Fame Intel oversold its product when it falsely represented that its software could perform the same functions as LCS's then-current software; LCS later learned that Fame Intel did not have the same capability and needed to recreate the entire server-based architecture. *Id.* at ¶¶ 10–11. LCS further charges that Fame Intel falsely represented that its software could satisfy LCS's need to accurately account for stock transfers, including a period of unavailability while equipment was transferred between locations. *Id.* at ¶ 12.

In May 2022, LCS and Fame Intel executed a Master Services Agreement (the Agreement), as well as a Software Proposal & Statement of Work (the SOW). *Id.* at 6 ¶ 15, 9 ¶ 38 (LCS attached the Agreement and the SOW as exhibits to the complaint). LCS asserts that certain representations contained in the SOW, later learned to be false, further induced LCS to execute the Agreement and the SOW. *Id.* at 6 ¶¶ 13–16. LCS alleges that Fame Intel repeatedly failed to meet software readiness deadlines and never produced a stable, final product. *Id.* at ¶¶ 27–32. Therefore, LCS terminated the contractual relationship in May 2024, having paid Fame Intel $907,797.70 to that point. *Id.* at 8 ¶¶ 33–34.

LCS charges the following six counts in its complaint: (1) breach of contract, (2) breach of the implied duty of good faith and fair dealing, (3), unjust enrichment, (4) violation of Wisconsin Statute § 100.18, (5) violation of New York General Business Law § 349, and (6) fraudulent inducement. *Id.* at 9–15.

When Fame Intel removed the action to federal court, the clerk of court randomly assigned the matter to me, and all parties consented to the jurisdiction of a magistrate judge under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b), *see* ECF Nos. 8, 11. Fame Intel filed a motion to dismiss counts two, three, four, and six from LCS's complaint for failure to state a
2

claim under Federal Rule of Civil Procedure 12(b)(6), and with respect to count six, also for failure to plead a claim of fraud with particularity under Rule 9(b). ECF No. 13. LCS filed a response to the motion, ECF No. 20, and Fame Intel submitted a reply brief, ECF No. 21.

## MOTION TO DISMISS STANDARD

A motion to dismiss under Rule 12(b)(6) "challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). To survive a motion to dismiss, "a complaint must 'contain sufficient factual matter . . . to state a claim to relief that is plausible on its face.'" *Kaminski v. Elite Staffing, Inc.*, 23 F.4th 774, 776 (7th Cir. 2022) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A complaint satisfies this pleading standard when its "'factual allegations . . . raise a right to relief above the speculative level.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "To analyze the sufficiency of a complaint [courts] must construe it in the light most favorable to the plaintiff, accept well-pleaded facts as true, and draw all inferences in the plaintiff's favor." *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 826 (7th Cir. 2014) (citing *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008)).

Under Rule 8(a), the complaint need only provide fair notice of what the plaintiff's claim is and the grounds upon which it rests. *Cler v. Illinois Educ. Ass'n*, 423 F.3d 726, 729 (7th Cir. 2005). Rule 8(a) is standard, but when a plaintiff grounds its claim for relief in allegation of fraud, then its pleading must meet the heightened standard of Fed. R. Civ. P. 9(b). *See Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007). Rule 9(b) requires a

plausible theory of fraud, for which the plaintiff provides "the who, what, when, where, and how" of the alleged fraud. *Id.* (citations omitted).

## DISCUSSION

Fame Intel moves to dismiss four of the six counts that LCS has alleged. The parties agree that New York law governs counts two and three of the complaint but dispute whether Wisconsin law should apply to counts four and six. ECF Nos. 20 at 6, 21 at 3 n.2. I will address each count and the relevant choice-of-law consequences in turn.

### I. Implied Duty of Good Faith and Fair Dealing

In count two, LCS alleges that Fame Intel breached the implied duty of good faith and fair dealing. ECF No. 10-1 at 10–11 ¶¶ 42–47. Specifically, LCS claims that "Fame Intel engaged in bad-faith conduct by grossly misrepresenting its software's capabilities and readiness to LCS knowing full well that the software was not ready" and that "Fame Intel intentionally used LCS as a 'guinea pig' to troubleshoot its software." *Id.* at ¶¶ 44–45. Fame Intel argues that count two should be dismissed because the claim is duplicative of LCS' breach of contract claim. ECF Nos. 14 at 8–9, 21 at 3–6.

"New York law does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled." *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 125 (2d Cir. 2013) (cleaned up) (citation omitted). Therefore, a claim for breach of this covenant is only viable if it "is based on different conduct and alleges different harm." *KCG Americas LLC v. Brazilmed, LLC*, No. 15 CIV. 4600(AT), 2016 WL 900396, at *5 (S.D.N.Y. Feb. 26, 2016) (citing *Pearce v. Manhattan Ensemble Theater, Inc.*, 528 F.Supp.2d 175, 180 (S.D.N.Y. 2007)). In other words, this claim "may be brought, if at all, only where one party's conduct, though not breaching the terms of

4

the contract in a technical sense, nonetheless deprived the other party of the benefit of its bargain.'" *Dreni v. PrinterOn Am. Corp.*, 486 F. Supp. 3d 712, 729 (S.D.N.Y. 2020) (citation omitted). Examples of such conduct may include: (1) "sabotag[ing] a party's ability to benefit under the contract by compelling the violation of a for-cause-termination provision, *Thompson v. Advanced Armament Corp., LLC*, 614 F. App'x 523, 525 (2d Cir. 2015); (2) promising commissions or profits and then failing to act in good faith to permit such commissions or profits to be earned, *Kapsis v. Am. Home Mortg. Servicing Inc.*, 923 F. Supp. 2d 430, 452 (E.D.N.Y. 2013); and (3) arbitrarily or irrationally exercising discretion in a way that lessens the other party's expected benefit, *Parneros v. Barnes & Noble, Inc.*, No. 18-CV-7834 (MKV), 2020 WL 5350531, at *7 (S.D.N.Y. Sept. 3, 2020).

LCS argues that its implied covenant claim cannot be dismissed as duplicative because it has identified different underlying conduct. ECF No. 20 at 7–8. LCS claims that Fame Intel breached the covenant of good faith and fair dealing through "gross misrepresentations about the readiness of the software throughout the parties' contractual relationship and conduct that established Fame Intel was using LCS as a 'guinea pig to troubleshoot its software." *Id.* LCS further alleges the breach of contract stems from Fame Intel's failure to provide commercially acceptable software. ECF No. 10-1 at 9 ¶ 39. Although the margin is slim, one could plausibly interpret this conduct as distinct, particularly given that the alleged misrepresentations would not necessarily lead to a breached contract if Fame Intel had timely produced an acceptable product despite any shortcomings existing when it made the representations in question.

Nevertheless, "[a] claim for breach of the implied covenant can be maintained in conjunction with a breach of contract claim only if the damages sought by the plaintiffs for breach of the implied covenant are not intrinsically tied to the damages allegedly resulting

5

from breach of contract." *Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*, 837 F. Supp. 2d 162, 205 (S.D.N.Y. 2011) (internal quotation marks and citation omitted). Therefore, even if the underlying conduct is materially distinguishable, LCS must identify distinct damages related to the two claims. Yet, LCS alleges the same damages: the amount LCS paid Fame Intel under the contract and lost profits. *See* ECF No. 10-1 at 9–10 ¶¶ 40–41, 47. Because LCS does not point to any distinct harm and names the same damages, the implied covenant claim is "superfluous" under New York law. *See* ECF No. 20; *Hall v. EarthLink Network, Inc.*, 396 F.3d 500, 508 (2d Cir. 2005). Accordingly, I will grant Fame Intel's motion to dismiss this count.

## II. Unjust Enrichment

LCS does not contest that, based on the current pleadings, its unjust enrichment claim should be dismissed because it is duplicative of its breach of contract claim. ECF No. 20 at 8–9. "New York courts have consistently held that a 'claimant cannot plead unjust enrichment in the alternative' where 'the validity of a contract that governs the subject matter at issue is not in dispute, and the claimant alleges breach of the contract.'" *Johnson v. Clearview AI, Inc.*, No. 23 CIV. 2441 (KPF), 2024 WL 2274267, at *10 (S.D.N.Y. May 20, 2024) (quoting *Stanley v. Direct Energy Servs., LLC*, 466 F. Supp. 3d 415, 430–31 (S.D.N.Y. 2020)). Accordingly, LCS qualifies its concession as being contingent on the validity of the Agreement. ECF No. 20 at 8–9. LCS did not challenge the validity of the Agreement but maintains that, if Fame Intel should challenge the validity of the Agreement in its responsive pleading or any counterclaim, then LCS should have the opportunity to replead its unjust enrichment claim. *Id.* For these reasons, I approve the parties' stipulation that count three (unjust enrichment) should be dismissed without prejudice. *See id.*; ECF No. 21 at 6–7.

### III. Wisconsin Statute § 100.18

In count four, LCS alleges that Fame Intel violated Wisconsin Statute § 100.18, which prohibits fraudulent representations to induce a sale. *See* ECF No. 10-1 at 11–12 ¶¶ 52–66; *Mueller v. Harry Kaufmann Motorcars, Inc.*, 859 N.W.2d 451, 458 (Wis. 2015). Fame Intel argues that this tort claim is not viable because the parties contractually agreed that New York law would govern any potential disputes, including tort claims. *See* ECF No. 14 at 11.

LCS acknowledges that the master services agreement contained a choice-of-law provision, which provided that "all claims arising out of or relating to this Agreement or the Services, including tort claims" would be governed by New York law, "without regard to conflict of law principles." ECF No. 20 at 11; *see also* ECF No. 10-1 at 9 ¶ 35. However, LCS maintains that the choice-of-law clause does not apply to the defendant's allegedly deceptive trade practices because the offending conduct occurred *before* the parties entered the contractual relationship. ECF No. 10-1 at 12 ¶ 68. More specifically, LCS claims that Fame Intel materially misrepresented its software products during sales pitches and in the SOW, which induced LCS to enter the contractual relationship. *See* ECF No. 10-1 at 11 ¶¶ 53–58.

Courts generally do not construe choice-of-law clauses to govern tort claims, "unless it is clear that this is what the parties intended." *Kuehn v. Childrens Hosp., Los Angeles*, 119 F.3d 1296, 1302 (7th Cir. 1997). Here, there is no doubt that the parties' choice-of-law clause explicitly includes torts. *See* ECF No. 10-1 at 22. LCS argues that the choice-of-law clause still should not apply because its tort claims are independent from the contracts in question. *See* ECF No. 20 at 10–11.

This independence argument appears to stem from the general consensus that "forum selection clauses apply to tort claims which require interpretation of the contract." *Boatwright*

7

*v. Delott*, 642 N.E.2d 875, 877 (Ill. 1994) (citing examples from the Third and Ninth Circuit Courts of Appeal); *see also NewSpin Sports, LLC v. Arrow Elecs.*, Inc., 910 F.3d 293, 306 (7th Cir. 2018) ("In determining whether a tort claim is contract-dependent [in Illinois], 'courts examine whether the action alleges a wrong based upon interpretation and construction of the contract, or whether the claim alleges elements constituting an independent tort.'") (citation omitted). However, the court need only determine whether a party has stated a tort claim independently from a contract claim if the scope of the parties' choice-of-law clause is unclear. *See NewSpin Sports*, 910 F.3d at 306 (noting that the plaintiff's tort claims did not "obviously" fall under the purview of the parties' choice-of-law provision). That is simply not the case here, where the parties explicitly expressed their intent to include torts related to their contracts within the scope of their choice-of-law provision.

  LCS contends that a choice-of-law clause must clearly express an intent to include pre-contractual conduct to cover the types of torts it alleges. ECF No. 20 at 10–11. To the contrary, the clear, tort-inclusive language employed by the parties appears aimed at avoiding exactly the types of analyses that LCS invites. Neither party has challenged the validity of the SOW or the Agreement, nor have they alleged any public policy implications. *See Warwick v. Schneider Nat'l, Inc.*, 538 F. Supp. 3d 867, 869–70 (E.D. Wis. 2021) (observing that contractual choice-of-law provisions are valid "as long as the parties' choice-of-law provision does not violate important public policies of a state whose law would be applicable if the parties choice of law provision were disregarded") (cleaned up) (quoting *Bush v. Nat'l Sch. Studios*, 407 N.W.2d 883 (Wis. 1987)). In fact, had LCS wanted to exclude pre-contractual conduct from the choice-of-law provision, it could have negotiated for such a clause in the first instance. Accordingly, under the parties' express choice-of-law provision, New York law governs LCS's

tort claims. Because count four alleges a tort under Wisconsin law, I will grant Fame Intel's motion to dismiss this claim.

## IV. Fraudulent Inducement

In count six, LCS alleges that Fame Intel committed fraudulent inducement by materially misrepresenting certain features of its software products with the intent to induce LCS to enter into the Agreement. ECF No. 10-1 at 14–15 ¶¶ 84–92. Fame Intel argues that this claim should be dismissed for any of the following three reasons: (1) it falls short of Rule 9(b)'s requirement that fraud be pled with particularity, (2) if Wisconsin law applies, the economic loss doctrine bars recovery, or (3) if New York law applies, the claim is duplicative and disallowed in conjunction with the claim for breach of contract. ECF No. 14 at 11–17.

Beginning with the choice of law issue, this claim is subject to New York law. Consistent with the foregoing analysis regarding count four, the parties clearly expressed their intent to include tort claims within their choice-of-law provision. *See* ECF No. 10-1 at 22; *Avudria v. McGlone Mortg. Co.*, 802 N.W.2d 524, 527 (Wis. Ct. App. 2011) (observing that "when interpreting a contract, [Wisconsin courts] look for the intent of the parties in the plain language of the contract"). This tort claim is obviously related to the Agreement and SOW. Accordingly, New York law governs the claim.

"Under New York law, a breach of contract will not give rise to a tort claim unless a legal duty independent of the contract itself has been violated." *Capax Discovery, Inc. v. AEP RSD Invs., LLC*, 285 F. Supp. 3d 579, 587 (W.D.N.Y. 2018) (quoting *Bayerische Landesbank, N.Y. Branch v. Aladdin Capital Mgmt. LLC*, 692 F.3d 42, 58 (2d. Cir. 2012)). "A misrepresentation of present facts is collateral to the contract (though it may have induced the plaintiff to sign the contract) and therefore involves a separate breach of duty." *Id.* (quoting *Merrill Lynch & Co. v.*

*Allegheny Energy, Inc.*, 500 F.3d 171, 184 (2d Cir. 2007)). "[A] plaintiff may therefore maintain parallel contract and tort actions where the allegations 'involve misstatements and omissions of present facts, not contractual promises regarding prospective performance.'" *Id.* (quoting *Merrill Lynch*, 500 F.3d at 184). "For example, if a plaintiff alleges that it was induced to enter into a transaction because a defendant misrepresented material facts, the plaintiff has stated a claim for fraud even though the same circumstances also give rise to the plaintiff's breach of contract claim." *First Bank of Americas v. Motor Car Funding, Inc.*, 257 A.D.2d 287, 291–92 (N.Y. App. Div. 1999) (citing *RKB Enters. v Ernst & Young*, 182 A.D.2d 971, 972–73 (N.Y. App. Div. 1992)).

LCS argues that its fraudulent inducement claim is not duplicative under New York law because the claim relates to misrepresentations Fame Intel made about its software's present capabilities. ECF No. 20 at 18. In the complaint, LCS alleges that Fame Intel materially misrepresented "the capabilities, functionality, and readiness of its software products . . . knew that these representations were untrue at the time they were made . . . [and] made these representations for the purpose of inducing LCS to rely on these statements and enter into the Agreement and related [SOW]." ECF No. 10-1 at 14–15 ¶¶ 84–92. On their face, these allegations plausibly allege present factual representations that induced LCS to enter the contract. Accordingly, the allegations plainly satisfy New York legal standards regarding tort claims that are collateral to breach of contract claims.

Turning to Rule 9(b), Fame Intel claims that the complaint does not reveal the who, what, where, and when of the "pre-contractual" statements that allegedly make up the fraud claim. ECF No. 21 at 10. More specifically, Fame Intel argues that LCS failed to adequately plead the scienter, or fraudulent state of mind, requirement for this type of claim. *See* ECF

10

No. 14 at 11–13. LCS points out that it alleged Fame Intel knew the representations were false at the time they were made and made the representations with the intent to induce LCS to enter the contractual relationship. ECF No. 20 at 15–17. Fame Intel does not respond to this explanation in its reply brief. *See* ECF No. 21.

Given the nature of fraudulent inducement claims, the scienter element may be inferred from circumstantial evidence alleged in the complaint. *See, e.g.*, Fed. R. Civ. P. 9(b) ("Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."). "The requisite strong inference of intent may be drawn either (a) by alleging facts to show defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Burton v. Iyogi, Inc.*, No. 13-CV-6926 DAB, 2015 WL 4385665, at *10 (S.D.N.Y. Mar. 16, 2015) (citing *Acito v. Imcera Group, Inc.*, 47 F.3d 47, 52 (2d Cir. 1995)). "Where the false representations are directed to the quality, adequacy or price of the goods themselves, the fraudulent intent is apparent because the victim is made to bargain without facts obviously essential in deciding whether to enter the bargain." *Id.* (quoting *United States v. Regent Office Supply Co.*, 421 F.2d 1174, 1182 (2d Cir. 1970). Here, LCS alleged that Fame Intel acted with fraudulent intent by claiming that it knowingly misrepresented key aspects of the software with the intent to induce a business transaction. *See* ECF No. 10-1 at 5–7, 14–15. Because LCS claims that Fame Intel forced it to bargain without essential facts about the quality of the goods in question, these allegations fall neatly within the pleading standard that New York law prescribes for fraudulent intent.

Fame Intel further argues that count six fails under Rule 9(b) because of the timing LCS alleges. ECF No. 14 at 12–13. LCS alleges that Fame Intel made the misrepresentations

11

during the April sales pitch and within the SOW executed in May. Fame Intel contends that LCS cannot rely on allegedly fraudulent statements in the SOW to support the fraudulent inducement claim. *See id.* Fame Intel argues that the SOW is a valid and enforceable contract, so its terms cannot be considered "prior" statements used to fraudulently induce a transaction. *See id.* (citing Compl., ECF No. 10-1 at ¶ 38). LCS responds that the statements made in the SOW support the fraudulent inducement claim because LCS had to consider the SOW's contents *prior* to execution, and therefore, those statements did in fact induce LCS to enter the contractual relationship. ECF No. 20 at 14.

As explained above, the relevant question boils down to whether the alleged misrepresentation concerned present facts or a promise of future performance. *See Capax Discovery*, 285 F. Supp. 3d at 587 (observing that "some of those allegedly fraudulent statement[s] are encompassed in the Agreement, others are not" and "their presence in the Agreement does not negate a fraud claim"). Here, the present or future character of the terms in question is unclear. *See* ECF No. 10-1 at (alleging in the complaint that Fame Intel represented in the SOW that it could help LCS "run your entire business faster and better" and "[m]ake adjustments on the fly by adding new buttons, fields, and forms"). The terms are not structured like contractual promises of future performance, so the court can plausibly read the terms as reflecting Fame Intel's present capabilities. At this stage of the proceedings, a plausible reading is sufficient.

LCS claims that Fame Intel, through Josh Lewis and Joe Lewis, misrepresented certain product capabilities during an April sales pitch and via two statements within the SOW, which induced LCS to enter the contractual relationship for those products to its detriment. Assuming the facts to be true and drawing all reasonable inferences in the plaintiff's favor,

LCS has adequately pled fraudulent inducement with particularity. Therefore, Fame Intel's motion to dismiss will be denied with respect to count six.

## CONCLUSION

For all the foregoing reasons, the court **GRANTS IN PART** and **DENIES IN PART** the defendant's motion to dismiss the plaintiff's complaint, ECF No. 13. Counts two, three, and four are **DISMISSED**. Count six may proceed as pled. The case shall continue in accordance with the scheduling order already entered, ECF No. 19.

**SO ORDERED** this 18th day of March, 2025.

_____
STEPHEN C. DRIES
United States Magistrate Judge